IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

ANTONIO FREEMAN,

    Petitioner,

v.                                                Case No. 1:17-cv-01950

JENNIFER SAAD, WARDEN[1]

    Respondent.

## PROPOSED FINDINGS AND RECOMMENDATIONS

In March 2017, Petitioner Antonio Freeman ("Petitioner") proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). This matter is assigned to the Honorable David A. Faber, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly considered the record, the undersigned **FINDS** that Petitioner clearly is not entitled to relief; therefore, the undersigned respectfully **RECOMMENDS** that the § 2241 petition be **DENIED**;

---

[1] Petitioner was incarcerated in Federal Correctional Institution McDowell ("McDowell") in Welch, West Virginia when he filed the instant petition, and he correctly named as respondent Barbara Rickard, the warden at that facility. Since that time, Petitioner has been transferred to Federal Correctional Institution ("FCI") Gilmer in Glenville, West Virginia where he is presently in custody. *See* BOP inmate locator at www.bop.gov/inmateloc/. Pursuant to Federal Rule of Civil Procedure 25(d), Jennifer Saad, warden of FCI Gilmer, will be substituted as respondent in this case. Further, despite the fact that petitioner is no longer in custody in the Southern District of West Virginia, the court retains jurisdiction over this matter. "Jurisdiction is determined at the time an action is filed; subsequent transfers of prisoners outside the jurisdiction in which they filed actions do not defeat personal jurisdiction." *United States v. Edwards*, 27 F.3d 564 (4th Cir. 1994) (citing *Francis v. Rison,* 894 F.2d 353, 354 (9th Cir.1990)).

Respondent's request for dismissal be **GRANTED**; and this matter be **DISMISSED**, with prejudice, from the docket of the Court.

## I. Relevant Background

On October 1, 2007, Petitioner was convicted in the United States District Court for the District of Maryland of using a firearm during a crime of violence and of aiding and abetting in a carjacking, both in violation of federal law. *United States v. Freeman, et al.*, Case No. 1:07-cr-00033 (D. Md. Oct. 1, 2007). Petitioner initiated the instant habeas proceeding during a period of incarceration at FCI McDowell. In the habeas petition, Petitioner protested his placement in FCI McDowell's Special Housing Unit ("SHU") following an August 25, 2016 incident in which he was alleged to be in possession of a knife in violation of Federal Bureau of Prisons ("BOP") regulations. (ECF No. 1 at 1-2). Petitioner complained that he had been housed in the SHU since the date of the alleged violation and that all of his requests for further information had been met with the response that institutional proceedings were suspended pending a potential criminal prosecution for the incident. (*Id.* at 2).

Petitioner alleged that he was approaching eligibility for assignment to a halfway house and his continued placement in the SHU was putting that eligibility at jeopardy. (*Id.*). Petitioner argued that his confinement in the SHU violated his constitutional right to due process of law, as well as his Eighth Amendment right to be free from cruel and unusual punishment. (*Id.* at 3). Petitioner emphasized that he had been housed in the SHU for almost seven months. (*Id.* at 3). He argued that tying his placement in the SHU to the potential prosecution rendered his segregation "indefinite," and likewise indeterminately delayed the hearing that he would face at the institutional level following the outcome of any criminal proceeding. (*Id.*). Petitioner pointed out that the institutional

hearing could result in disciplinary segregation, loss of good time, and the revocation of anticipated benefits. However, none of the time he spent in the SHU while the criminal investigation was pending would count toward potential sanctions at the institutional level. Consequently, all of the time he had served in the SHU—and would serve until the criminal prosecution was completed—was in effect "dead time." Petitioner worried that his stay in segregation would negatively affect both his eligibility for, and the timing of, his anticipated placement in halfway housing. (ECF No. 1 at 3-4). Petitioner further argued that the prison administration was precluding him from contesting the validity of the disciplinary charge through the administrative process while the criminal investigation was pending, and that his placement in the SHU meant his access to the law library was more limited than it would be if he were in the general population. (*Id.* at 4).

Petitioner added that leaving him in the SHU for seven months, with no end in sight, was cruel and unusual punishment, because he had "suffered psychologically" as he watched inmates who committed similar infractions enter and leave segregated housing while he remained. (*Id.* at 7). Petitioner stated that the more limited contact with the outside world afforded to those housed in the SHU had damaged his relationships. (*Id.*). He complained of experiencing extreme stress and noted that he had not been afforded access to therapy. (*Id.* at 7-8).

Petitioner further alleged that on January 13, 2017, and again on March 9, 2017, he received a "target sheet" from the United States Attorney's Office informing him that he was the target of a federal grand jury investigation and he could choose to appear to testify before the grand jury. (ECF No. 1 at 3.). He contended that the failure of the Government to provide him with an attorney following the announcement of a potential prosecution against him violated his Sixth Amendment right to counsel. (*Id.* at 3, 5).

3

Petitioner stated that he was contacted "ex parte" by the United States Attorney's Office when he was sent the letter informing him of the grand jury process. (ECF No. 1 at 6). He claimed that this contact from the Government while he was unrepresented by counsel violated his Sixth Amendment right, as well as his Fifth Amendment right against self-incrimination. (*Id.*). Petitioner further argued that the failure to appoint counsel impeded his ability to prepare a defense regarding his impending prosecution. (*Id.*). For relief, Petitioner requested that this Court order the prison to release him from the SHU back into the general population; appoint him counsel for his pending prosecution; and order the United States Attorney's Office to release his incident report to the prison. (*Id.* at 8-9).

Respondent filed a response and motion to dismiss the petition on April 27, 2017, arguing that Petitioner had incorrectly filed his claim under § 2241. (ECF No. 12 at 2). Respondent asserted that Petitioner was challenging the conditions of his confinement, and not the duration or computation of his sentence; therefore, his claim was not cognizable under a writ of habeas corpus and must instead be brought as a civil rights action. (*Id.* at 3). Respondent additionally argued that Petitioner's continued housing in the SHU did not interfere with his estimated halfway house eligibility date. (*Id.* at 3-4).

Petitioner subsequently filed a reply memorandum, as well as an affidavit, (ECF Nos. 14, 15), insisting that his claims were appropriately brought under § 2241. (ECF No. 14, at 2). Petitioner argued that his claim was cognizable under § 2241, because he was claiming that his placement in segregation violated due process principles. (*Id.*). In addition, Petitioner alleged that his placement in the SHU created "atypical and significant" hardship in relation to the ordinary incidents of prison life. (ECF No. 15 at 2).

While the instant § 2241 petition was pending, Petitioner filed a Petition for a Writ

4

of Mandamus on April 10, 2017. *Freeman v. United States*, No. 1:17-cv-02279, 2017 WL 4544628, at *1 (S.D.W. Va. Aug. 10, 2017), report and recommendation adopted, No. 1:17-cv-02279, 2017 WL 4544608 (S.D.W. Va. Oct. 11, 2017). In this petition, Petitioner asked this Court to require the United States Attorney's Office to dismiss or bring the criminal charges pending against him, and if the charges were brought, Petitioner requested that an attorney be appointed to represent him. *Id.*

On April 13, 2017, this Court appointed a Federal Public Defender to represent Petitioner in relation to the target letter sent by the United States Attorney investigating Petitioner's possession of a knife at FCI McDowell. *See United States v. Freeman*, Case No. 1:17-cr-00089 (S.D.W. Va. Apr. 13, 2017) at ECF No. 2. Ultimately, Debra Kilgore, a CJA Panel Attorney, was appointed to represent Petitioner. *Id.* at ECF No. 5. On May 23, 2017, a federal grand jury returned an indictment charging Petitioner with knowingly and unlawfully possessing a prohibited object designed and intended to be a weapon, specifically a handcrafted object with a sharpened point known as a "shank," while an inmate of a federal prison in violation of Title 18 of the United States Code, sections 1791(a)(2) and 1791(b)(3). *Id.* at ECF No. 10. On June 14, 2017, Magistrate Judge Omar J. Aboulhosn ordered Petitioner to be detained pending trial. *Id.* at ECF No. 22. Petitioner pleaded guilty to the charged offense on July 12, 2017. *Id.* at ECF Nos. 28-31. He was sentenced on October 24, 2017 to 13 months in jail with 3 years of supervised release. *Id.* at ECF Nos. 34, 36.

In the meantime, on August 10, 2017, Magistrate Judge Aboulhosn recommended that Petitioner's Writ of Mandamus be dismissed both on the merits and as moot due to Petitioner's indictment and guilty plea; the petition was dismissed on October 11, 2017. *See Freeman v. United States*, No. CV 1:17-02279, 2017 WL 4544628, at *3 (S.D.W. Va.

Aug. 10, 2017), report and recommendation adopted, No. CV 1:17-02279, 2017 WL 4544608 (S.D.W. Va. Oct. 11, 2017). Petitioner was subsequently transferred from FCI McDowell to FCI Gilmer in Glenville, West Virginia, where he is currently serving his remaining sentence.[2]

## II. Discussion

Petitioner raises claims under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. For the reasons that follow, Petitioner's claims should be dismissed.

### A. Sixth Amendment Claims

Petitioner contends that his Sixth Amendment rights were violated when he received a target letter from the United States Attorney's Office and was told that he was facing prosecution, but had not been provided with an attorney. However, the Sixth Amendment right to counsel does not attach until formal proceedings against the defendant have been initiated. Merely being the "target" or subject of investigation by a grand jury does not rise to this level of formality. *See United States v. Ayala*, 601 F.3d 256, 272 (4th Cir. 2010); *see also United States v. Myers,* 123 F.3d 350, 359 (6th Cir. 1997) ("Because [defendant], although a target when he appeared before the grand jury, had not been formally charged, his Sixth Amendment right to counsel had not yet attached"); *United States v. Ramsey*, 785 F.2d 184, 193 (7th Cir.) ("The sixth amendment does not come into play until after the suspect becomes 'accused.' There is therefore no right to counsel before the grand jury ...."") (internal citation omitted); *United States v. Vasquez*, 675 F.2d 16, 17 (2d Cir.1982) ("...the fact that a person is the subject of an

---

[2] *See* BOP inmate locator at www.bop.gov/inmateloc/.

investigation is not enough to trigger his Sixth Amendment right to counsel."); *United States v. Mandujano*, 425 U.S. 564, 581, (1976) (stating that a target appearing before a grand jury does not have a Sixth Amendment right to counsel) (plurality).

In this case, Petitioner was appointed counsel on April 13, 2017, before the grand jury returned its indictment on May 23, 2017 and before Petitioner made any appearance related to the criminal action. *Freeman,* Case No. 1:17-cr-00089, at ECF Nos. 2, 11. As such, he was appointed counsel before he was charged; thereby, ensuring his Sixth Amendment rights. Moreover, as Petitioner received the relief he requested in that regard, his Sixth Amendment claim was rendered moot. "To be justiciable under Article III of the Constitution, a conflict between litigants must present a 'case or controversy' both at the time the action is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed,* 719 F.2d. 689, 693-94 (4th Cir. 1983); *see also Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n.22 (1997) ("The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence") (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969). Given that Petitioner was timely appointed counsel, the undersigned **FINDS** that his Sixth Amendment claim fails on the merits. Furthermore, the undersigned **FINDS** that Petitioner's claim was rendered moot at the time counsel was appointed in his criminal proceeding, because Petitioner received the relief that he requested.

### B. Eighth Amendment Claims

To state a claim under § 2241, a petitioner must show that he is "in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). To determine whether a claim is cognizable under habeas corpus or under a civil rights action, a court must review whether the challenge is either to the fact or duration of the prisoner's confinement, or instead to the conditions of the prisoner's confinement. *See Rodriguez v. Ratledge*, 715 F. App'x 261, 266 (4th Cir. 2017). While a habeas petition is appropriate when a prisoner seeks a "quantum change" in his level of custody, when he only "seeks a different program, location, or environment, his challenge is to the conditions of his confinement rather than the fact of his confinement and his remedy is under civil rights law." *Sappleton v. Hogsten*, Civil Action No. 1:11–00552, 2014 WL 2565547, at *2 (S.D.W. Va. Jun. 6, 2014) (quoting *Campbell v. Deboo*, 2011 WL 1694454, at *2 (N.D.W. Va. May 4, 2011)).

Petitioner raises Eighth Amendment claims stating that he has experienced "traumatizing" psychological suffering due to his housing in the SHU. (ECF No. 1 at 7-8). He notes inadequate therapeutic care, a lack of access to the outside world to the detriment of his relationships, and "indifferent" prison staff. (*Id.*). Eighth Amendment challenges to the conditions of confinement are not properly addressed through habeas petitions, and instead, should be challenged by civil rights actions. *See e.g. Roudabush v. Warden FCI Edgefield*, No. CV 8:18-1818-BHH-JDA, 2018 WL 3979858, at *1 (D.S.C. July 18, 2018), report and recommendation adopted, No. CV 8:18-1818-BHH, 2018 WL 3972257 (D.S.C. Aug. 20, 2018) (challenge alleging harassment, unsanitary food, and lack of mental health care not properly raised by § 2241 claim); *Crooker v. Stewart*, No. CIV.A. ELH-14-1972, 2015 WL 1210209, at *3 (D. Md. Mar. 13, 2015) (alleged Eighth Amendment violations should be addressed by *Bivens* or §1983 action, not a § 2241 claim); *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir.1991) ("Habeas corpus proceedings are

the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement.... A civil rights action, in contrast, is the proper method for challenging 'conditions of confinement'"). Thus, as Petitioner's Eighth Amendment claims challenge the conditions of his confinement, and not the duration or fact of his sentence, the undersigned **FINDS** that these claims should be dismissed as they are not cognizable under § 2241.

### C. Due Process Claims

The Fourth Circuit has held that "there is federal habeas corpus jurisdiction over the complaint of a federal prisoner who is challenging not the validity of his original conviction, but the imposition of segregated confinement without elementary procedural due process and without just cause." *McNair v. McCune*, 527 F.2d 874, 875 (4th Cir. 1975); *see also Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) ("If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, *or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation*—then habeas corpus is his remedy.") (emphasis added); *Streeter v. Hopper*, 618 F.2d 1178, 1181 (5th Cir.1980) (stating claim seeking release from imposition of administrative segregation without due process is cognizable in habeas). The Fourth Circuit has "distinguished between claims concerning due process or just cause, which are cognizable in habeas proceedings, and claims concerning the conditions of confinement, which are not." *Hillberry v. Ballard*, No. 2:13-CV-21893, 2014 WL 7161012, at *9–10 (S.D.W. Va. Dec. 15, 2014).

The Due Process Clause of the Fourteenth Amendment mandates that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S.

Const. amend. XIV, § 1. Imprisonment for a crime does not completely divest a person of due process protections. *Wolff v. McDonnell*, 418 U.S. 539, 555–56, (1974). "In order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (markings omitted). Although the "Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement ... a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations." *Wilkinson v. Austin*, 545 U.S. 209, 221–22, (2005) (citations omitted).

The Supreme Court has held that inmates have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483–84, (1995). The Fourth Circuit determined that *Sandin* "does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." *Prieto v. Clarke*, 780 F.3d 245, 249 (4th Cir. 2015). Instead, inmates must first establish an interest in "avoiding onerous or restrictive confinement conditions" that arises from a specific policy or regulation (e.g. a policy or regulation mandating periodic review). *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2017) (citing Prieto, 780 F.3d at 249). If the inmate can establish such an interest, the inmate must then show that the conditions experienced by the inmate constituted atypical and significant hardship in relation to the ordinary incidents of prison life. *Id.* After establishing such an interest, the inmate must then show that the onerous or restrictive confinement conditions experienced by the inmate constituted atypical and significant hardship in relation to the ordinary incidents of prison life. *Id.* Here, Petitioner can satisfy

the first prong under *Sandin*, because BOP regulations require monthly review of segregation placement. 28 C.F.R. § 541.26; *see also Incumaa*, 791 F.3d at 527. The question then becomes whether Petitioner's placement in the SHU while awaiting his criminal prosecution resulted in atypical and significant hardship.

"The Supreme Court has recognized that post-*Sandin*, the Federal Courts of Appeals 'have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system,' largely owing to the difficulty of discerning the 'ordinary incidents of prison life.'" *Hillberry*, 2014 WL 7161012, at *12 (quoting *Wilkinson*, 545 U.S. at 223.) In *Wilkinson*, the Supreme Court found that "under any plausible baseline" conditions where inmates were restricted to almost no human contact or conversation, endured lights that were on 24 hours a day, and received only one hour a day of exercise in a small indoor room, constituted atypical and significant hardship. *Wilkinson*, 545 U.S. at 223 -224(citations omitted). The Supreme Court found it especially significant that the segregation placement in *Wilkinson* was, after the initial 30-day review, subject to review only annually, and that placement in the segregated housing made an otherwise eligible prisoner ineligible for parole. *Id.*

By contrast in *Beverati,* the Fourth Circuit found that the *Sandin* standard was not met where the inmates asserted their cells were "infested with vermin," "smeared with human feces," and "flooded with water." 120 F.3d at 504. The inmates additionally stated that their cells were "unbearably hot;" they received substandard food, clothing, linen, and bedding that did not comply with prison regulations; they were only permitted to leave their cells three to four times per week with no outdoor recreation time; and they received no educational or religious services. *Id.* Despite these conditions, the Fourth Circuit held that the inmates' segregation did not constitute an atypical and significant

11

hardship in relation to ordinary prison life. *Id.*

Using the baseline set in *Beverati* and viewing the evidence in the light most favorable to Petitioner, the undersigned **FINDS** that Petitioner does not allege conditions of confinement in administrative segregation that satisfy the standard set forth in *Sandin* and its progeny. This is especially true where much of the harm Petitioner alleges, that his placement in a halfway house will be jeopardized, is entirely speculative. *See Hillberry,* 2014 WL 7161012, at *12 (rejecting similar habeas due process claim where most of the petitioner's complaints were "hypothetical and may never occur"). The additional alleged conditions described by Petitioner "do not come close to equaling the nature of those described in *Beverati*, where the Fourth Circuit held that the inmates' claims were insufficient to establish a liberty interest under the due process clause." *Id.* citing *Beverati* 120 F.3d at 504; *see also Denkenherger v. Ballard*, No. 2:11–cv–00466, 2012 WL 529894, at *4 (S.D.W. Va. Feb. 17, 2012) (restrictions of segregation, including limitations on "recreation, education, showers, and phone usage" were not atypical); *Menei v. Rubenstein*, No. 2:11–cv–00967, 2012 WL 4845659, at *4 (S.D.W. Va. Oct. 11, 2012) (rejecting similar due process claim where conditions complained of were "usual aspects of a solitary confinement.").

When asked to consider a strikingly similar case, this Court found that being placed in administrative segregation while awaiting the outcome of pending prosecution did not constitute atypical and significant hardship. *Aguon v. Rickard*, No. CV 1:17-01864, 2017 WL 4544625, at *4 (S.D.W. Va. Aug. 16, 2017), report and recommendation adopted, No. CV 1:17-01864, 2017 WL 4544602 (S.D.W. Va. Oct. 11, 2017). As here, the petitioner in *Aguon*, argued that his placement was essentially infinite in length and pointed to a lack of access to the law library as a significant hardship. *Id.* Nevertheless, the Court in *Aguon*

12

found that the petitioner's placement in segregation for a period of approximately five months while awaiting prosecution did not impinge on his constitutional rights. *Id.*

Other courts that have considered the practice of placing inmates in segregated housing while awaiting criminal investigations have not found a due process violation. Placement of an inmate in administrative segregation for up to one year without an institutional hearing has been upheld where the matter was referred to the FBI for criminal prosecution. *Scott v. Craig*, No. 9:05-CV-1359 LEK/VEB, 2008 WL 4866051, at *3-5 (N.D.N.Y. Nov. 7, 2008); *see also Delaney v. Ozmint*, No. 4:05-1968-HFF-TER, 2006 WL 1878982, at *8 (D.S.C. July 5, 2006) (upheld placement in administrative segregation for 130 days while under investigation); *Miller v. Fox*, Case No. CV 15–06888 DMG (AFM), 2017 WL 1591939, at *3 (C.D. Cal. Feb. 1, 2017), report and recommendation adopted, No. CV 15-06888 DMG (AFM), 2017 WL 1632867 (C.D. Cal. Apr. 28, 2017) (permissible to place inmate in segregation while investigation was pending); *United States v. Delgado*, No. 97 Cr 0007, 1997 WL 811540, at *1 n. 2 (S.D.N.Y. Apr.8, 1997) ("Although hearings or review by prison staff are usually required either before or shortly after an inmate is placed in administrative detention, an investigation is suspended when it appears likely than an incident may be the subject of criminal prosecution. A prison staff investigation does not resume until the agency responsible for the criminal investigation advises that further staff investigation may occur."); *Williams v. Menifee*, No. 05 CIV. 4045 (RWS), 2006 WL 2481823, at *5 (S.D.N.Y. Aug. 25, 2006), aff'd, 331 F. App'x 59 (2d Cir. 2009) (suspension of disciplinary process appropriate where matter referred to United States Attorney's Office for potential criminal prosecution). Thus, Petitioner's placement in the SHU while awaiting the outcome of a criminal investigation to determine whether he possessed an illegal weapon does not rise to the level of atypical

hardship that creates a due process violation.

In any event, Petitioner has subsequently been convicted of the underlying charge and has been transferred out of the SHU at FCI McDowell to FCI Gilmer, mooting his requested relief. To the extent that Petitioner takes issue with the level of process he received regarding the disciplinary incident, his subsequent guilty plea in court and under the advisement of counsel provides far more due process protection than the minimal standards of due process required in the institutional context. "Prison disciplinary proceedings are not part of a criminal prosecution. Therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings." *Rojas v. Driver*, No. CIV. A. 5:06CV88, 2007 WL 2789471, at *4 (N.D.W. Va. Sept. 24, 2007), aff'd, 267 F. App'x 302 (4th Cir. 2008) (citing *Wolff*, 418 U.S. at 556).

To the extent that Petitioner challenges his placement in administrative segregation while the prosecution was pending, his conviction for the underlying charge and subsequent transfer render those challenges moot as well. *See Jordan v. Hood,* 117 F. App'x 31, 32 (10th Cir. 2004) (when petitioner challenged his placement in solitary confinement pending trial, his conviction on the charges and transfer mooted the challenge); *Pinson v. Berkebile*, 604 F. App'x 649, 653 (10th Cir. 2015) (dismissing claim challenging stay in segregation where segregation already served did not increase prison time and prisoner released from segregation at time of ruling); *Medberry v. Crosby*, 351 F.3d 1049, 1053 (11th Cir. 2003) (finding § 2241 motion moot as prisoner already served challenged segregation stay and made no showing that placement would increase time served). Petitioner was convicted of a new crime and is currently serving his sentence for that crime in a different facility. Thus, the relief he sought, release from the SHU at FCI McDowell, is now moot. Therefore, the undersigned **FINDS** that Petitioner fails to state

14

a meritorious due process claim and, in any event, his release from the SHU and transfer to FCI Gilmer rendered moot his claim for relief.

### III. Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Petitioner's § 2241 motion, (ECF No. 1), be **DENIED**; that Respondent's request for dismissal be **GRANTED**; and this matter be **DISMISSED**, with prejudice, from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (for the filing of objections) and three days (if this document was received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Faber and Magistrate Judge Eifert.

The Clerk is directed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, counsel of record, and any unrepresented party.

**FILED:** September 25, 2018

_____
Cheryl A. Eifert
United States Magistrate Judge